**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re *Ex Parte* Application of<br><br>Leak Yim,<br>For an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings | Case No. 1:26-mc-00095-ACR |

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF LEAK YIM'S**
***EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782**

**SEIDEN LAW LLP**

Jake Nachmani
Andrew Astuno
Ting Huang
Peter Grabowski
322 Eighth Avenue, Suite 1200
New York, NY 10001
(646) 766-1723

*Attorneys for Applicant Leak Yim*

Pursuant to the Court's Minute Order dated August 26, 2026, Applicant Leak Yim respectfully submits this supplemental memorandum of law in support of his Application. For the reasons set forth herein and in the Application, the Court should grant the Application to obtain discovery from Respondent Jacob Sims for use in foreign proceedings.[1]

## ARGUMENT

### I. APPLICANT HAS ESTABLISHED THAT SIMS IS FOUND IN THE DISTRICT

By the Application, Applicant set forth that the Application satisfies § 1782's requirement that Respondent "resides or is found" in this District because: (i) pursuant to tag-jurisdiction, "Applicant rightfully anticipates that Sims will enter the District during his ordinary course of business, at which point he will be found in the District when Applicant serves him with the subpoenas filed contemporaneously [with the Application]"; and (ii) "Sims works and conducts business in the District." ECF 1 at 13-15. To satisfy § 1782's "is found" requirement, Applicant needs to show only that Applicant reasonably anticipates that Mr. Sims will travel to the District and that, upon Mr. Sims' being there, Applicant will effectuate service of the Application on him. Applicant reasonably anticipates that Sims will travel to the District because of his employment as a Senior Advisor at Washington, D.C.-based Inca Digital and other prior D.C.-based engagements, and because, according to Mr. Sims's own public announcement, ***he will be in Washington, D.C. this coming week*** for an event he is hosting on ***September 16***, ***2026***. Suppl. Nachmani Decl. ¶¶ 9-10; Ex. 2**.** As set forth herein, Applicant has sufficiently established that Respondent "is found" in the District.

---

[1] All capitalized terms not otherwise defined herein refer to the terms as defined in the Application. All references to "**Minute Order**" are to paragraphs of the Court's August 26, 2026 Minute Order to Show Cause. All references to "**Suppl. Nachmani Decl.**" are to the Supplemental Declaration of Jake Nachmani in Support of the Application, filed contemporaneously herewith. All emphasis is added; internal quotations and citations are omitted.

### A. <u>Sims Will Be Found In The District When He Is Served There</u>

Citing *In re Edelman*, 295 F.3d 171 (2d Cir. 2002), the Court ordered Applicant to demonstrate why Mr. Sims may be found in the District notwithstanding that Mr. Sims has not yet been served with a subpoena. Minute Order ¶3. As set forth below, Applicant does so.

Courts interpret § 1782's "is found" requirement based on a "flexible reading of the phrase." *In re Edelman*, 295 F.3d at 178. This flexible reading allows courts to effectuate "Congress's intent that § 1782 be interpreted broadly, especially given the district court's ability to exercise discretion in deciding whether, and in what manner, to order discovery in particular cases." *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019). To that effect, a respondent is "found" in a district pursuant to tag jurisdiction – "***if a person is served with a subpoena while physically present in the district of the court that issued the discovery order***[.]" *In re Edelman*, 295 F.3d at 180. In accordance with the principles of tag jurisdiction, a respondent is "found" in a district "***at the time of service of the subpoenas***," not based on evidence establishing the likelihood of when a respondent will be found in a district. *In re FourWorld Event Opportunities Fund, L.P.*, 2022 WL 17156111, at *3 (S.D.N.Y. Nov. 21, 2022); *see also Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F. Supp. 2d 45, 52 (D.D.C. 2005) ("the Second Circuit held that … if a person is served with a subpoena for testimonial evidence while physically present in the district of the court that issued the discovery order, then for purposes of § 1782(a) he is found in that district and can be required to appear for a deposition."). Accordingly, and pursuant to tag jurisdiction, "when a potential witness comes to [a district] it is neither unfair nor inappropriate under [§ 1782] to undertake his discovery here." *In re Edelman*, 295 F.3d at 179.

Notably, *Edelman* does <u>not</u> require an applicant to serve a respondent as a precondition to a court's granting a § 1782 application. In *Edelman*, respondent was served with the applicant's §

1782 subpoena while the respondent was in New York for business ***three days after the court had already granted the Application***. *In re Edelman*, 295 F.3d at 174. The applicant in *Edelman* could not have served the respondent until the court had already authorized service of the subpoenas by granting the § 1782 application. *Id.* After the court had granted the application and after the respondent had been served, the court held that service of the subpoena on respondent while he was in New York for business was a valid exercise of tag jurisdiction "consistent with due process." *Id.* at 179.

Here, as in *Edelman*, Applicant does not need to establish that Mr. Sims has already been served—or is physically present in the District at the moment the Court considers the Application. Rather, for the Court to grant the Application, Applicant needs to establish only that Mr. Sims can be found in the District. To that effect, Applicant has made that showing, as Applicant established that Mr. Sims has an ongoing professional relationship with D.C.-based Inca Digital. ECF 1-5 at ¶6. And notably and demonstrating both the correctness of Applicant's showing and the appropriateness for the Court's granting the Application, on September 10, 2026 and in connection with his work at Inca Digital, Mr. Sims announced that he will be in the District of Columbia for an event he is hosting concerning Southeast Asian scam networks, an event backed and published by Inca Digital. Suppl. Nachmani Decl. ¶¶9-10, Ex 2. In addition, less than four months before this filing, Mr. Sims traveled to the District for a congressional appearance concerning the same general subject matter. Suppl. Nachmani Decl. at ¶¶5-8. Should the Court grant the Application and authorize service of the subpoenas, Applicant anticipates serving Mr. Sims when he is in the District, at which point he will be properly subject to tag jurisdiction consistent with traditional notions of due process. ECF 1-5 at ¶¶6–8; *see In re Edelman*, 295 F.3d at 174, 179-80.

As courts routinely set forth, the determination of whether a respondent is found in a district pursuant to tag jurisdiction occur ***after*** a court has granted a § 1782 application and ***after*** the respondent has been served in the respective district. *See Lopes v. JetsetDC, LLC*, 994 F. Supp. 2d 135, 145-46 (D.D.C. 2014) ("A Court's exercise of jurisdiction based on physical presence alone constitutes due process because it is one of the continuing traditions of our legal system that define the due process standard of traditional notions of fair play and substantial justice."); *see also In re del Valle Ruiz*, 939 F.3d 520, 526 n.7 (2d Cir. 2019) ("Tag jurisdiction refers to a court's exercise of personal jurisdiction over an individual who is served, and thus 'tagged,' while physically present in the forum."); *In re Laggner*, 2025 WL 311198, at *7 (S.D.N.Y. Jan. 28, 2025) (serving respondent "demonstrated that [respondent] can be found within this District, which satisfies the first of the three requirements imposed by Section 1782."); *In re Genial Institucional Corretora de Cambio, Titulos e Valores Mobiliarios S.A.*, 2025 WL 40783, at *2 (S.D.N.Y. Jan. 7, 2025) (serving respondent satisfied the "is found" requirement); *In re Godfrey*, 526 F. Supp. 2d 417, 421 (S.D.N.Y. 2007) (it is "common sense" that "one who is personally served with process while present in a district is 'found' in that district for the purpose of foreign discovery applications.").

This liberal interpretation makes sense, as granting a § 1782 application alone does not prejudice a respondent. If the Court were to grant the Application but Applicant were unable to serve Respondent, Respondent would not be compelled to provide discovery on the basis of tag jurisdiction. *See In re del Valle Ruiz*, 939 F.3d at 530 n.11 ("Although [respondents] are technically parties to this § 1782 proceeding, they are functionally nonparties in the sense that they are not subject to liability in the underlying foreign proceedings."). And even if Respondent were served, the Court should adhere to this liberal standard, as Respondent's "due process rights are not violated because Respondent can later challenge any discovery request by moving to quash

pursuant to Federal Rule of Civil Procedure 45(c)(3)." *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012); *see also In re del Valle Ruiz*, 939 F.3d at 527 (noting the appropriateness of tag jurisdiction in the context of a § 1782 application because such an application "is simply a discovery mechanism and does not subject a person to liability."). Likewise, Respondent may "challenge the district court's power to issue a subpoena under the terms of an authorizing statute." *Application of Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997); *see also In re Application of Moussy Salem, Applicant, For an Order to Take Discovery Pursuant to 28 U.S.C. § 1782 From JPMorgan Chase Bank, N.A.*, 2024 WL 3026670, at *9 (S.D.N.Y. June 17, 2024) (denying motion to quash and upholding the grant of § 1782 application); *In re JSC BTA Bank*, 577 F. Supp. 3d 262, 268 (S.D.N.Y. 2021) (granting *ex parte* § 1782 relief because respondents will have an opportunity to object to the subpoenas).

### B. Tag Jurisdiction Suffices; Neither General Nor Specific Jurisdiction Is Needed

Citing *In re de Leon*, 2020 WL 1047742 (D.D.C. Mar. 4, 2020), the Court ordered Applicant to establish whether the Court needs general or specific jurisdiction over Mr. Sims to grant the Application. Minute Order at ¶2. As set forth below, neither is necessary where Mr. Sims is subject to tag jurisdiction. Moreover, the discovery sought is sufficiently related to Mr. Sims' work for Inca Digital to support the Court's exercise of specific jurisdiction over Mr. Sims.

"Among the most firmly established principles of personal jurisdiction in American tradition is that the courts of a State have jurisdiction over nonresidents who are physically present in the State." *Burnham v. Superior Ct. of California, Cnty. of Marin*, 495 U.S. 604, 610 (1990). For that reason tag jurisdiction "based on physical presence alone constitutes due process because it is one of the continuing traditions of our legal system that define the due process standard of 'traditional notions of fair play and substantial justice.'" *Id.* at 619. Moreover, it is not subject to

the minimum-contacts analysis that governs general and specific jurisdiction. *See id.* at 619 (explaining that the minimum-contacts standard was developed to evaluate assertions of jurisdiction over defendants who are absent from the forum, not to render in-forum presence insufficient); *see also Lopes v. JetsetDC, LLC,* 994 F. Supp. 2d at 145-46 (personal jurisdiction established over individual defendant physically served in the District); *Overseas Partners, Inc. v. PROGEN Musavirlik ve Yonetim Hizmetleri, Ltd. Sikerti*, 15 F. Supp. 2d 47, 50-51 (D.D.C. 1998) ("Physical service of process on [the individual] within the District is clearly sufficient to support the Court's exercise of personal jurisdiction over him.").

The same principle applies to § 1782 applications. In *In re Edelman*, the Second Circuit relied on *Burnham* to hold that tag jurisdiction satisfies § 1782's "resides or is found" requirement. 295 F.3d 171, 179-80; *see also* Section I.A *supra*. Because tag jurisdiction based on physical presence and service is consistent with due process, the Second Circuit reasoned that § 1782, which "is simply a discovery mechanism and does not subject a person to liability," does not "require[] more." *Id.* at 179. Accordingly, the Second Circuit held that "if a person is served with a subpoena while physically present in the district of the court that issued the discovery order, then for the purposes of § 1782(a), he is 'found' in that district." *Id.* at 180. Following *Edelman*, *In re del Valle Ruiz* recognized the same rule, explaining that *Edelman* had held "tag" jurisdiction sufficient to satisfy § 1782's "found" requirement. 939 F.3d at 526–28, n.7. Accordingly, tag jurisdiction obviates the need to establish general jurisdiction over Mr. Sims.

By the Minute Order, the Court observed that Mr. Sims' LinkedIn profile lists his location as Cambodia and states that he works as a visiting fellow at Harvard University. Based on these representations, the Court implicitly inquired as to how it could exercise general jurisdiction over Mr. Sims. Minute Order at ¶2; ECF 1-6 at 2. Notably, those facts would bear on whether Mr. Sims

could be subject to general jurisdiction based on his domicile or other forum affiliations. But Applicant does not rely on general jurisdiction and does not need to. Where an individual is personally served while physically present in the forum, jurisdiction does not depend on whether he is domiciled, resides, or otherwise maintains sufficient affiliations there. *See Burnham*, 495 U.S. at 619; *Lopes*, 994 F. Supp. 2d at 145-46; *Overseas Partners*, 15 F. Supp. 2d at 51. For instance, the petitioner in *Burnham* was domiciled in New Jersey, his only contacts with California were a few short visits, and the suit was unrelated to those visits. Jurisdiction was nonetheless proper because he was served while present in the forum. *See Burnham*, 495 U.S. at 608. Accordingly, Mr. Sims' residence in Cambodia and his Harvard fellowship do not preclude the exercise of tag jurisdiction when he is served in this District.

The same answer disposes of the Court's question concerning whether it can exercise specific jurisdiction over Mr. Sims. Applicant need not show how Mr. Sims' work at Inca Digital is related to the discovery sought in these proceedings. Such a showing is unnecessary where jurisdiction instead rests on personal service of an individual physically present in the forum. *See Burnham,* 495 U.S. at 619; *Lopes,* 994 F. Supp. 2d at 145-46. To that effect, *Lopes* expressly recognized that in-forum service supports jurisdiction regardless of whether the underlying claim is related to the individual's activities in the forum. 994 F. Supp. 2d at 145-46.

Respectfully, the Court's reference in the Minute Order to *In re de Leon* is not controlling here. In that case, the court analyzed ***whether a corporate-respondent was found in the district, not a natural person-respondent***. *In re de Leon*, 2020 WL 1047742, at *2. Unlike natural persons, a corporation cannot be subject to tag jurisdiction; "[a] corporation is 'found within' the district where it is headquartered or incorporated." *In re Pishevar*, 2023 WL 2072454, at *2 (D.D.C. Feb. 17, 2023). Accordingly, because one of the corporations was not found in the district through

traditional means of the location of its headquarters or state of incorporation, the court applied *In re del Valle Ruiz*, 939 F.3d at 527, and extended the limits of personal jurisdiction by finding it had specific jurisdiction over the non-domiciliary corporate respondent. *Id.* The court reasoned that because the information sought from the non-domiciliary corporate respondent related to work it performed for the other corporate respondent, which was headquartered in the district and therefore found in the district, the court could exercise specific jurisdiction over the non-domiciliary respondent. *Id.*

Here, by contrast, Sims will be properly subject to tag jurisdiction as a natural person when he enters the District. Section I.A *supra*. For the Court to grant the Application, Applicant needs only to set forth a reasonable basis for why Applicant anticipates that Mr. Sims will travel to the District, and, comporting with due process, the Court's exercise of personal jurisdiction over Mr. Sims will be proper when Mr. Sims is served in the District.

Even if the Court were to require Applicant to establish specific jurisdiction, Applicant submits that the requisite relationship between Mr. Sims' District contacts and the discovery sought is present. In the § 1782 context, specific jurisdiction may be exercised where "the discovery material sought proximately resulted from the respondent's forum contacts." *In re del Valle Ruiz,* 939 F.3d at 530; *see In re de Leon,* 2020 WL 1047742, at *2 (specific jurisdiction where the information sought related to the respondent's work for an entity located in the District).

The same nexus exists here. As set forth herein, on September 16, 2026, Sims will be in the District to host a Washington, D.C.-based event discussing his new report: "Scam State Architecture: Disruption, Adaptation, and Enduring Threat of Cambodia's State-Crime Nexus." Suppl. Nachmani Decl. at ¶¶9-10; Ex. 2. This report and event—backed and published by Inca Digital—will feature Sims discussing how most of Cambodia's "notorious scam compounds" sit

empty, with his related analysis. *Id.* Furthermore, on May 19, 2026, Sims appeared in Washington, D.C. before the House Select Committee on the Chinese Communist Party to provide expert testimony concerning transnational scam networks in Southeast Asia, particularly Cambodia. Nachmani Decl. at ¶¶5-8; Ex. 1. In his written testimony, Sims identified himself as a Senior Advisor on Transnational Crime and Emerging Threats at Inca Digital and explained that, through his "research, advisory, and policy roles," he assists governmental and civil-society partners in understanding how transnational criminal networks become embedded in political systems. *Id.* Sims further explained that the analytical framework presented to Congress—his "scam-state architecture"—was developed through research supported by Inca Digital, and his testimony relied upon Inca Digital's analysis of Cambodian corporate records and alleged criminal networks. *Id.*

Mr. Sims' work in the District substantially relates to the subject of the discovery sought by the Application. The Application seeks evidence concerning the origin, sources, factual basis, and dissemination of allegations that Sims published concerning Applicant and alleged Cambodian money-laundering and transnational-criminal networks, including allegations that Applicant contends contributed to his inclusion in the original draft of H.R. 5490. *See* ECF 1-3 at ¶¶119–29. Accordingly, to the extent the subpoena seeks communications with Congress or other District-based governmental actors, materials prepared or transmitted in connection with Mr. Sims' congressional or policy work or Inca Digital research used in that work, those materials arise directly from Sims' forum contacts. To the extent the subpoena reaches earlier materials generated independently of those contacts, Applicant relies on tag jurisdiction rather than specific jurisdiction.

## **CONCLUSION**

For the reasons set forth herein and in the Application, the Court should grant the Application.

Dated: September 11, 2026
Washington, D.C.

*/s/ Jake Nachmani*

**SEIDEN LAW LLP**
Jake Nachmani
(*pro hac vice*)
Andrew Astuno
Ting Huang
(*pro hac vice* forthcoming)
Peter Grabowski
(*pro hac vice* forthcoming)
322 Eighth Avenue, Suite 1200
New York, NY 10001
(646) 766-1723
jnachmani@seidenlaw.com
aastuno@seidenlaw.com
ohuang@seidenlaw.com
pgrabowski@seidenlaw.com

*Attorneys for Applicant Leak Yim*